PT:AAS/KMT
F. #2015R01817

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

EDUARDO CORNEJO,

        Defendant.

- - - - - - - - - - - - X

1 6 M 6 9

C O M P L A I N T

(18 U.S.C. § 2421)

EASTERN DISTRICT OF NEW YORK, SS:

        ROCKY VAN WARDEN, being duly sworn, deposes and states that he is a
Special Agent with the Federal Bureau of Investigation, duly appointed according to law and
acting as such.

        In or about and between April 1, 2015 and the present, within the Eastern District
of New York and elsewhere, the defendant EDUARDO CORNEJO, together with others, did
knowingly transport one or more individuals in interstate commerce, to wit: from the State of
New York to the State of New Jersey, with intent that such individuals engage in prostitution in
violation of New York Penal Code §§ 230.00, 230.20, 230.25 and New Jersey Revised Statutes
§ 2C:34-1.

        (Title 18, United States Code, Section 2421)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been since August 2010.   I am responsible for, among other things, conducting and assisting in investigations into illegal acts taken by members of law enforcement, including the New York City Police Department ("NYPD").   These investigations are conducted both in an undercover and overt capacity.   I have participated in investigations involving search warrants and arrest warrants.   As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2.    The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents and witnesses, information obtained from court-authorized warrants and orders, and other sources.

3.    The investigation has revealed that EDUARDO CORNEJO, who until January 15, 2016 was employed as an officer with the New York City Police Department ("NYPD")[2], has been using his personal vehicle (the "Cornejo Vehicle") to transport individuals in interstate commerce with intent that such individuals engage in prostitution, in violation of 18 U.S.C. § 2421.

---

[1]  Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

[2]  CORNEJO was dismissed from the NYPD because of unrelated conduct.

4.     The investigation began after the NYPD received an anonymous tip in late spring of 2015 that CORNEJO was selling the sexual services of a young woman. Subsequently, members of law enforcement began to conduct surveillance on CORNEJO.

5.     During the evening of July 9, 2015, members of law enforcement observed CORNEJO drive the Cornejo Vehicle to a parking lot adjacent to an apartment on Newberry Avenue in Staten Island. The investigation has revealed that CORNEJO rents an apartment on Newberry Avenue (the "Newberry Apartment"). Notably, the Newberry Apartment was not CORNEJO's registered address with the NYPD. After leaving the parking lot on Newberry Avenue, CORNEJO drove the Cornejo Vehicle to a parking lot outside a mall in Staten Island, where he remained with the engine running outside the main entrance for approximately 45 minutes. Immediately before CORNEJO left the parking lot, members of law enforcement observed two young women ("Female 1" and "Female 2") enter the Cornejo Vehicle. Members of law enforcement then curtailed their surveillance of CORNEJO. Utility and cable television records obtained in the investigation show that the Newberry Apartment is used by Female 1.

6.     During the evening of September 22, 2015, members of law enforcement observed CORNEJO drive the Cornejo Vehicle to the vicinity of the Newberry Apartment at approximately 5:41 p.m., where Female 1 and another young woman ("Female 3") entered the Cornejo Vehicle. Members of law enforcement observed CORNEJO speaking with Female 1 and Female 3 inside the Cornejo Vehicle. CORNEJO then drove Female 1 and Female 3 in the Cornejo Vehicle to a motel in Fort Lee, New Jersey (the "Fort Lee Motel"). Members of law enforcement observed CORNEJO exit the vehicle and walk to the front desk. Subsequently,

CORNEJO, Female 1, and Female 3 entered a motel room whose door was visible from the parking lot.

7.      During the next approximately two hours, CORNEJO, Female 1, and Female 3 repeatedly entered and exited their room at the Fort Lee Motel, which I understand is indicative of prostitution activity.   Members of law enforcement observed what appeared to be a bachelor party in a motel room two doors away from the room used by CORNEJO, Female 1, and Female 3, leading members of law enforcement to believe that the rooms could be connected by an interior door.   At approximately 8:35 p.m., CORNEJO, Female 1, and Female 3 entered the Cornejo Vehicle and started to drive away.   Before they could leave the parking lot, however, a member of law enforcement working in an undercover capacity (hereinafter, a "UC") approached the Cornejo Vehicle and spoke with CORNEJO.   When CORNEJO and Female 1 were asked whether they could arrange a bachelor party, they looked at each other before both responding in the negative.   Similarly, a UC approached the motel room believed to be hosting a bachelor party and asked the persons present whether they could arrange a bachelor party.   The persons present responded in the negative.

8.      On or about September 25, 2015, the Fort Lee Motel provided investigating agents with records of rooms rented by CORNEJO.   The records revealed that CORNEJO rented rooms at the Fort Lee Motel on the following dates, with the following check in and check out times:

| Check In Date | Check In Time | Check Out Date | Check Out Time |
|---|---|---|---|
| June 3, 2015 | 7:29 p.m. | June 4, 2015 | 11:00 a.m. |
| July 1, 2015 | 8:40 p.m. | July 5, 2015 | 11:00 a.m. |

| July 16, 2015 | 8:25 p.m. | July 18, 2015 | 11:00 a.m. |
| August 14, 2015 | 10:59 p.m. | August 16, 2015 | 11:00 a.m. |
| September 22, 2015 | 6:26 p.m. | September 23, 2015 | 11:00 a.m. |

Notably, the records from the Fort Lee Motel reveal that all of the check-in times occurred in the early or late evening.

9. During the evening of October 9, 2015, members of law enforcement observed CORNEJO leave work with the NYPD in the Cornejo Vehicle and drive to the Fort Lee Motel, arriving at approximately 12:50 a.m. the next morning. Members of law enforcement observed that Female 1 and Female 3 were already present at a room in the Fort Lee Motel. CORNEJO, Female 1, and Female 3 repeatedly entered and exited a room at the Fort Lee Motel. A license plate reader showed that the Cornejo Vehicle and a car observed driven by Female 3 on October 9, 2015 (the "Female 3 Car") left the Fort Lee Motel the following morning.

10. Investigating agents ran the license plate of the Female 3 Car through New York State Department of Motor Vehicle Records and observed that a female user of the Female 3 Car had previously provided a cellular telephone with the 917 area code (the "917 Number") as her contact number after an accident. Investigating agents conducted open source searches on the 917 Number and found the 917 Number listed as the contact in multiple ads for escort services. Notably, the Female 3 Car is registered to Female 3's mother.

11. During the evening of October 15, 2015, members of law enforcement observed CORNEJO leave work with the NYPD in the Cornejo Vehicle and drive to a motel in

East Meadow, Long Island (the "East Meadow Motel"), arriving at approximately 7:37 p.m.

Approximately one hour later, CORNEJO, Female 1, and two other young women ("Female 4"

and "Female 5") entered the Cornejo Vehicle and drove to a bank and a convenience store.

During these stops, members of law enforcement observed CORNEJO conversing with the

other occupants of the Cornejo Vehicle. They returned to the East Meadow Motel

approximately 45 minutes later.

12.     CORNEJO, Female 1, Female 4, and Female 5 entered the East Meadow

Motel at approximately 9:16 p.m., and CORNEJO returned by himself to the Cornejo Vehicle

approximately 7 minutes later. At approximately 9:48 p.m., members of law enforcement

observed two unknown males depart the East Meadow Motel, as CORNEJO reentered the East

Meadow Motel. Members of law enforcement conducting surveillance could not see which

room was being used by CORNEJO or the two unknown males, as the rooms at the East

Meadow Motel are accessed from a central lobby.

13.     At approximately midnight, CORNEJO and Female 4 entered the

Cornejo Vehicle. At approximately 1:44 a.m., members of law enforcement stopped the

Cornejo Vehicle for driving erratically. During the car stop, members of law enforcement

observed female attire including thong underwear inside the Cornejo Vehicle. CORNEJO was

briefly questioned by members of law enforcement and allowed to leave shortly after the traffic

stop.

14.     After the car stop, members of law enforcement observed CORNEJO

drive Female 5 to the East Meadow Motel at 3:03 a.m., where CORNEJO dropped Female 4

off. Members of law enforcement later observed the Cornejo Vehicle parked in front of a

motel on Hylan Boulevard in Staten Island, New York (the "Staten Island Motel") at approximately 3:49 a.m.  Subsequently, members of law enforcement visited the Facebook page of Female 1 and observed that Female 4 is one of Female 1's Facebook friends.

15.     During the evening of October 22, 2015, members of law enforcement observed CORNEJO leave work at the NYPD in the Cornejo Vehicle.  However, CORNEJO drove erratically, and members of law enforcement were unable to maintain surveillance.

16.     During the evening of November 5, 2015, members of law enforcement observed CORNEJO leave work at the NYPD in the Cornejo Vehicle and take the same route he had taken on October 22, 2015, when members of law enforcement were unable to maintain surveillance.  At approximately 7:10 p.m., CORNEJO drove to the Far Rockaway section of Queens and retrieved an unknown female ("Female 7").  CORNEJO and Female 6 drove in the Cornejo Vehicle to another location in Far Rockaway, where Female 6 retrieved what appeared to be an overnight bag.  CORNEJO and Female 6 then drove in the Cornejo Vehicle to a motel in Secaucus, New Jersey (the "Secaucus Motel"), arriving there at approximately 8:47 p.m. Members of law enforcement observed that Female 1 was already present at the Secaucus Motel when CORNEJO and Female 6 arrived.

17.     During the late evening of November 5 and the early morning of November 6, 2015, CORNEJO, Female 1, and Female 6 repeatedly entered and exited a room at the Secaucus Motel.  On at least one occasion, members of law enforcement observed CORNEJO and Female 6 conversing inside the Cornejo Vehicle as they waited for men to arrive to meet with Female 1.

18.    Additionally, members of law enforcement observed two different unknown males enter and exit the same room used by CORNEJO, Female 1, and Female 6. For example, CORNEJO, Female 1, and Female 6 entered the room at approximately 2:00 a.m. At approximately 2:06 a.m., CORNEJO exited the room and entered the Cornejo Vehicle.   At approximately 2:10 a.m., one of the unidentified males entered the room and, at approximately 2:28 a.m., left the room.

19.    While CORNEJO, Female 1, and Female 6 were at the Secaucus Motel, investigating agents searched through online classified ads for escort services and located an ad offering escort services in the Secaucus area with a contact number with a 516 area code (the "516 Number").   The ad was for two women whose photographs appeared to be those of Latina women.   Though the ads did not include full images of the women's faces, they sufficiently depicted the women's bodies and body types and included enough details for the investigating agents to conclude that they resembled Female 1 and Female 6.   A UC texted the 516 Number, and received in response an offer to meet for an hour for $200.   The 516 Number indicated that the meeting location would be the Secaucus Motel.   The UC, however, did not consummate the meeting.

20.    During the evening of November 13, 2015, members of law enforcement conducting surveillance observed CORNEJO leave work at the NYPD in the Cornejo Vehicle and drive to a building in the Bronx, where he retrieved two women ("Female 7" and "Female 8").   CORNEJO then drove Female 7 and Female 8 to the Staten Island Motel, arriving there at approximately 8:37 p.m.   Members of law enforcement conducting surveillance observed CORNEJO, Female 7, and Female 8 all enter a room at the Staten Island Motel.   CORNEJO

and Female 8 left the room at approximately 9:32 p.m. and drove away in the Cornejo Vehicle. However, members of law enforcement conducting surveillance did not observe Female 7 leaving the room of the Staten Island Motel that night.

21.     Subsequently, members of law enforcement retrieved account details for Female 1 from the Secaucus Motel, which reflected that Female 1 had stayed at the Secaucus Motel on various dates during November and December 2015.   In particular, the Secaucus Motel provided members of law enforcement with surveillance video from November 14, 2015 at approximately 11:30 a.m., showing CORNEJO entering the Secaucus Motel and checking in at the front desk.   The records provided by the Secaucus Motel showed that Female 1 stayed at the Secaucus Motel from November 13 through November 15, 2015.

22.     During the evening of November 19, 2015, members of law enforcement conducting surveillance observed CORNEJO leave work at the NYPD in the Cornejo Vehicle and drive to a building in the Bronx, where he retrieved Female 8 and another unidentified woman ("Female 9"), who entered the Cornejo Vehicle and began to speak with CORNEJO. After making several stops, CORNEJO, Female 8, and Female 9 arrived at a motel in the Bronx (the "Bronx Motel") at approximately 8:16 p.m.   Members of law enforcement conducting surveillance observed CORNEJO exit the Cornejo Vehicle, enter the office of the Bronx Motel, and leave the office with a key in his hand.   CORNEJO, Female 8, and Female 9 then drove to a restaurant and a drug store, before returning to the Bronx Motel at approximately 10:35 p.m. During these stops, members of law enforcement conducting surveillance observed CORNEJO conversing inside the Cornejo Vehicle.   Shortly after CORNEJO, Female 8, and Female 9 were observed entering a room at the Bronx Motel, surveillance concluded.   Subsequently,

members of law enforcement visited Female 1's Facebook page and observed that Female 8 is

Female 1's Facebook friend.   Similarly, they observed that Female 9 is Female 8's Facebook

friend.

         23.      During the afternoon of November 28, 2015, members of law

enforcement conducting surveillance observed CORNEJO leave his residence in the Cornejo

Vehicle and drive to New Jersey, where he retrieved Female 1 at approximately 12:50 p.m.

CORNEJO then drove Female 1 in the Cornejo Vehicle to the East Meadow Motel, arriving

there at approximately 2:05 p.m.   CORNEJO entered the office and obtained keys for a room.

Female 1 and CORNEJO then entered a motel room together.   At approximately 2:33 p.m.,

CORNEJO exited the motel room and returned to the Cornejo Vehicle.   Approximately 2

minutes later, an unknown male entered the motel room that CORNEJO had just left.   At

approximately 3:46 p.m., the unknown male left the East Meadow Motel and drove away.

After the unknown male had left the parking lot of the East Meadow Motel, CORNEJO stepped

out of the Cornejo Vehicle and returned to the motel room.   Surveillance was thereafter

discontinued.

         24.      On December 5, 2015, members of law enforcement conducting

surveillance observed CORNEJO drive the Cornejo Vehicle to the East Meadow Motel,

together with two unknown females ("Female 10" and "Female 11").   While CORNEJO,

Female 10, and Female 11 were at the East Meadow Motel, investigating agents searched

through online classified ads for escort services and located an ad offering escort services in the

East Meadow area with the 516 Number as the contact number.   The ad was for two women

whose photographs appeared to be those of Latina women and appeared to contain images

previously observed in ads used by CORNEJO's prostitutes.   A UC called the 516 Number in a recorded conversation, and spoke with a woman about the cost of engaging in specific sexual acts with the woman.   In response to questions from the UC, the woman indicated that the cost would be $100 for 15 minutes, $150 for 30 minutes, and an additional $50 for "going down."[3] Based on my training and experience, my knowledge of the investigation and the context of this phone call, I believe that the woman used the phrase "going down" to refer to oral sex.   At the conclusion of the call, the investigating agent agreed to meet with the woman later that day.

25.     That afternoon, members of law enforcement observed CORNEJO, Female 10, and Female 11 depart the East Meadow Motel in the Cornejo Vehicle and run some errands at a mall.   A UC then sent text messages to the 516 Number regarding the meeting that day.   Later, while driving adjacent to the Cornejo Vehicle, a UC called the 516 Number.   This call was recorded.   In this conversation, the member of law enforcement reiterated that he was interested in engaging in oral sex with the female on the line.   The woman in the conversation indicated that she was returning to a motel and would text its location.   The member of law enforcement then received a text message containing the address of the East Meadow Motel.

26.     Members of law enforcement observed Female 10 speaking on the phone at the same time as the UC was having the conversation described in paragraph 25, above. Female 10 was inside the Cornejo Vehicle during the conversation and she hung up the phone the same time that the UC's conversation ended.   Members of law enforcement then observed CORNEJO and Female 10 engage in oral discussions inside the Cornejo Vehicle as they drove

---

[3] All quoted language in this affidavit is based on draft translations and transcripts, which are subject to change.

in the direction of the East Meadow Motel. Based on the above, I believe that Female 10 participated in the communications over the 516 Number described above. I further believe that, in the oral conversation in the Cornejo Vehicle that could not be overheard, CORNEJO and Female 10 discussed prostitution activity.

27.     On January 3, 2016, investigating officers discovered online classified ads for escort activity featuring a photograph depicting Female 7. The online advertisement said that Female 7 would be working at the Staten Island Motel. Investigating officers were aware that CORNEJO and prostitutes associated with CORNEJO had previously used the Staten Island Motel to engage in prostitution activity, so investigating officers traveled to that location to conduct surveillance. Once at the Staten Island Motel, investigating officers spoke to the hotel manager, who informed the officers that a white female and a black female had checked into a room at the hotel earlier that day. The manager showed investigating agents the Connecticut identification card provided by the white female at the time of check-in, which identified Female 7 and contained her photographic image.

28.     Members of law enforcement then conducted surveillance in the vicinity of the Staten Island Motel, during which they observed the Cornejo Vehicle enter the parking lot and park at approximately 4:45 p.m. Because of the way the parking lot of the Staten Island Motel is configured and the tinted windows on the Cornejo Vehicle, members of law enforcement were not able to see who was driving the Cornejo Vehicle without creating a significant risk that they would be detected by the individual driving the Cornejo Vehicle. Members of law enforcement were, however, able to observe the full license plate of the Cornejo Vehicle, and, using a law enforcement database, they confirmed that the license plate

was still registered to CORNEJO as of January 3, 2016. In addition, I am aware that in the course of this investigation, members of law enforcement conducting surveillance on CORNEJO and the Cornejo Vehicle have not observed anyone other than CORJENJO driving the Cornejo Vehicle. Accordingly, there is probable cause to believe that CORNJEO was the individual driving the Cornejo Vehicle on January 3, 2016.

29.     During the surveillance, members of law enforcement observed Female 8 exit the Staten Island Motel and approach the passenger side of the Cornejo Vehicle. Members of law enforcement observed that the passenger side window of the Cornejo Vehicle was open and they observed Female 8 lean toward the vehicle and engage in an oral conversation with the individual inside the Cornejo Vehicle, likely CORNEJO. The officers conducting surveillance were not able to hear the conversation, but I believe Female 7 and CORNEJO were discussing prostitution activity. Shortly thereafter, officers conducting surveillance left the parking lot of the Staten Island Motel to avoid being detected by the CORNEJO or Female 7, and parked approximately a block away. From that vantage point, the officers were not able to see whether Female 7 entered the Cornejo Vehicle or returned to the motel after the conversation at the Cornejo Vehicle.

30.     As officers continued their surveillance in the vicinity of the Staten Island Motel, a UC called the 516 Number associated with the online classified ad discussed in paragraph 19 at approximately 6 p.m. The telephone call was recorded. A woman answered the phone and the UC asked for her rates. The woman replied that she charged $100 for 30 minutes or $150 for 60 minutes. The UC then began to ask about specific sex acts, at which

time the woman abruptly hung up. The UC called back and again began to ask about specific sex acts, and the woman again abruptly hung up.

      31.     On January 11, 2016, the Honorable Ann M. Donnelly, United States District Judge for the Eastern District of New York, authorized law enforcement agents to install a Title III listening device in the Cornejo Vehicle for a period of 30 days. <u>See</u> 16-misc-0070 (AMD). On the same date, the Honorable Cheryl L. Pollak, United States Magistrate Judge for the Eastern District of New York, authorized law enforcement to install a tracking device on the Cornejo Vehicle for a period of 30 days. <u>See</u> 15-misc-2374.[4] The tracking device was installed in the Cornejo Vehicle on or about January 12, 2016 and the listening device was installed on or about January 14, 2016.

      32.     During the monitoring period, agents intercepted oral communications made by CORNEJO and others present in and in the vicinity of the Cornejo Vehicle during which they discussed, in sum and substance, the fact that the women transported by CORNEJO were engaging in prostitution activity. Below is a summary of some of the intercepted oral communications.

      33.     On January 14, 2016 at approximately 8:59 p.m., CORNEJO, while inside the Cornejo Vehicle, spoke on the phone with an unknown person. In pertinent part, CORNEJO stated, "I had the girls in Long Island, but they in Huntington." Based on the

---

[4] The Honorable Roanne L. Mann, United States Magistrate Judge for the Eastern District of New York previously authorized the installation of a tracking device in the Cornejo Vehicle. However, due to operational security concerns, the device was not installed pursuant to this initial authorization.

investigation to date, I believe that "girls" refers to prostitutes employed and transported by CORNEJO.

34.     On January 21, 2016 at approximately 2:56 p.m., CORNEJO, while inside the Cornejo Vehicle with three unknown females, asked an unknown female, "Who is going to fuck you today?"  At approximately 3:03 p.m., an unknown female told another unknown female, "I'm Brianna's friend, you know me as Amy."  Notably, members of law enforcement have located ads in Backpage.com for "Amy" and "Briana" who are believed to be prostitutes employed by CORNEJO.[5]

35.     Also on January 21, 2016, at approximately 3:21 p.m., while CORNEJO was still inside the Cornejo Vehicle with three unknown females, an unknown female referred to the Rockville Centre Motel as follows: "It's now run down, it's nice outside."  Later, she added, "I was just saying maybe we should post an ad [inaudible] it like fuck that, I'm trying to make that money."  Also at approximately 3:21 p.m., an unknown female asked, "How many times are we working in the room in the middle of a date and niggas is walking in our room, and we are dumping off the guy like wait?"  At approximately 3:23 p.m., an unknown female stated, "I had asked my date that came like what, I told him to book the motor lodge."

36.     Also on January 21, 2016, at approximately 10:11 p.m., CORNEJO, while inside the Cornejo Vehicle stated, "The girls is at the [Rockville Centre Motel] so it nice and clean, it's picking up now it was alright last night."  Two minutes later, CORNEJO stated,

---

[5] Backpage.com is a classified advertising website.  Based on my training, experience, my knowledge of this investigation and information provided to me by other members of law enforcement, I am aware that Backpage.com is used by individuals to advertise the sale of lawful goods and services and also by individuals engaged in prostitution to advertise their unlawful services.

"That might make it hot though, standing outside with a bunch of girls. . . . They're going to know what's up real quick." I believe that CORNEJO was referring to avoiding detection by law enforcement ("That might make it hot").

37. On January 22, 2016 at approximately 9:55 a.m., an unknown female, while inside the Cornejo Vehicle, stated on the phone, "I'm not in Staten Island right now so I can't roll over there, send me a picture." I believe the unknown female was soliciting a client ("I can't roll over there, send me a picture."). At the time of this call, CORNEJO was inside the Cornejo Vehicle.

38. On January 22, 2016 at approximately 11:37 a.m., while inside the Cornejo Vehicle, CORNEJO told an unknown female, "They both made like 400 bucks . . . I go for 60-40, and then they count it." I believe that CORNEJO was referring to the manner in which he splits proceeds with prostitutes he employs. At approximately 1:30 p.m., CORNEJO told an unknown female, "I didn't take you because you were working; you were working."

39. Similarly, the tracking device shows that the Cornejo Vehicle was in the vicinity of various hotels or motels in Staten Island and Long Island, including the Rockville Centre Motel and the Staten Island Motel, on the following dates: January 13, 2016, January 15, 2016, January 16, 2016, January 17, 2016, January 18, 2016, January 20, 2016, January 21, 2016, January 22, 2016, and January 26, 2016. I believe that this pattern of travel activity, which includes numerous afternoon and evening visits to hotels and motels, is consistent with transporting women to engage in prostitution.

WHEREFORE, your deponent respectfully requests that the defendant EDUARDO CORNEJO be dealt with according to law.

Furthermore, your deponent respectfully requests that this affidavit, arrest warrant and any other papers submitted in support of this application be sealed until further order of the Court so as to prevent notifying the defendant of the pending warrant, which could result in his flight, the alteration of travel plans to avoid arrest and/or the destruction of evidence.

ROCKY VAN WARDEN
Special Agent, Federal Bureau of Investigation

Sworn to before me this
day of January, 2016

THE HON
UNITED S
EASTERN