

U.S. Department of Justice

United States Attorney
Eastern District of New York

PT:AAS
F. #2015R01871

271 Cadman Plaza East
Brooklyn, New York 11201

September 5, 2017

By Hand and ECF

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Eduardo Cornejo
                  Criminal Docket No. 16-96 (S-1) (BMC)

Dear Judge Cogan:

        The government respectfully submits this letter regarding sentencing in the above-referenced matter, currently scheduled for September 15, 2017 at 9:30 a.m. The defendant – who was an officer with the New York City Police Department ("NYPD") until January 15, 2016 – pleaded guilty, pursuant to a superseding information, to conspiring to engage in sex trafficking of a child, in violation of 18 U.S.C. § 1594(c). The charges arise from the defendant's orchestration of a prostitution ring involving at least 10 females, including a minor. For the reasons articulated below, a sentence within the applicable Guidelines range of 87 to 108 months' imprisonment is appropriate.

I.    Background

        Until his termination on January 15, 2016 for unrelated misconduct, the defendant was an eleven-year veteran of the NYPD.[1] While still working for the NYPD, the defendant began to traffic at least ten different women in an interstate prostitution scheme. In particular, members of law enforcement observed the defendant transporting various women to motels throughout the New York metropolitan area, including New Jersey and Long Island, often immediately after the defendant finished his daily work with the NYPD. As confirmed by online advertisements featuring these women, as well as telephonic contact by undercover officers with some of the women, the investigation further revealed that the women transported by the defendant engaged in illegal prostitution activity. Investigating

---

      [1]    The defendant also served as a U.S. Marine.

officers observed that many of the women trafficked by the defendant had a very youthful appearance. (Presentence Investigation Report ("PSR") ¶¶ 7-13).

In January 2016, members of law enforcement observed that at least one of the women transported by the defendant ("Jane Doe") appeared to be particularly young. Concerned about the possibility that the defendant might be trafficking a minor, law enforcement interviewed Jane Doe shortly after the defendant transported her to a motel. Jane Doe presented her identification document to members of law enforcement, who further observed that she was born in November 1997 – meaning that she had just turned 18 years old approximately two months earlier. In fact, the investigation confirmed that the defendant began transporting Jane Doe to participate in prostitution activity since she was 16 years old and that she engaged in commercial sexual acts at the defendant's direction while she was a minor. (PSR ¶ 14).

Pursuant to judicial authorization, members of law enforcement subsequently installed a hidden listening device in the defendant's vehicle. Interception of oral communications inside and in the vicinity of the vehicle confirmed that the defendant was illegally transporting women to engage in prostitution. For example, the defendant stated, "The girls is at the [a motel] so it nice and clean, it's picking up now it was alright last night." Soon thereafter, he stated, "That might make it hot though, standing outside with a bunch of girls. . . . [Members of law enforcement] going to know what's up real quick."

Pursuant to an arrest warrant authorized by the Honorable Marilyn D. Go, United States Magistrate Judge for the Eastern District of New York, agents arrested the defendant on February 2, 2016. Following his arrest, the defendant agreed to waive his Miranda rights and made a statement to agents. In sum and substance, the defendant admitted that he had been transporting women so that they could engage in prostitution. Moreover, the defendant admitted that he had transported Jane Doe with the intent that she engage in prostitution since at least 8 months prior to her arrest, at which time she was 17 years old. (PSR ¶ 15).

At the time of the defendant's arrest, agents seized and searched his cellular telephone, pursuant to a judicially authorized search warrant. A search of the defendant's phone revealed numerous messages, photographs, and videos confirming the defendant's participation in an illegal prostitution scheme. Among the photographs, many of which were sexually explicit, was an image of a large pile of money in the shape of a Christmas tree on what appears to be a motel bed.

During the defendant's post-arrest interview, agents handed the defendant his telephone momentarily, at which time the defendant attempted to destroy evidence by erasing several text messages between himself and a coconspirator that were stored on the phone. Through a subsequent forensic search of the phone, however, the government recovered these messages. (PSR ¶ 17).

At a detention hearing on February 3, 2016, the defendant was released pursuant to a $200,000 secured bond. Among other restrictions, the bond restricted the defendant's contact with victims and witnesses of the alleged crimes, limited the defendant's travel to the Eastern and Southern Districts of New York, imposed a curfew outside of the hours of 7 a.m. to 7 p.m., and imposed a search condition on the defendant's phone by Pretrial Services.

On March 1, 2016, a grand jury in the Eastern District of New York returned an indictment charging the defendant with transportation of individuals to engage in prostitution, in violation of 18 U.S.C. § 2421, and sex trafficking of a child, in violation of 18 U.S.C. § 1591(a)(1). The sex trafficking of a child charge carried a mandatory minimum sentence of 10 years' imprisonment.

Notwithstanding his arrest by federal authorities, the defendant's transgressive behavior continued unabated after his release on bond. Supervision by Pretrial Services revealed the defendant's repeated violations of many of the terms of his bond. For example, GPS monitoring of the defendant's phone revealed that he had been frequenting various hotels, motels, and inns between April and July 2016. Moreover, officers performing surveillance on July 25, 2016 observed the defendant driving two females, one of whom was a known prostitute that the defendant had associated with as part of the conduct for which he is charged in this case. (PSR ¶ 4). On August 3, 2016, Pretrial Services searched the defendant's phone and recovered deleted text messages consistent with the defendant's continued promotion of prostitution activity. (PSR ¶ 5). On August 10, 2016, Your Honor revoked the defendant's bond. The defendant has remained in custody since that date.

On September 21, 2016, the defendant pleaded guilty, pursuant to a superseding information, to conspiring to engage in sex trafficking involving a child, in violation of 18 U.S.C. § 1594(c). (PSR ¶ 1). Notably, this charge does not carry a mandatory minimum period of incarceration. However, it still carries the collateral consequence of requiring the defendant, once any term of imprisonment has been completed, to register as a sex offender. See 18 U.S.C. § 4042(c); (PSR ¶¶ 79-82).

On December 6, 2016, the Probation Department disclosed the PSR. The PSR calculates a total offense level of 32 as follows: (1) a base offense level of 24 under § 2G1.3(a)(4); (2) a 2-level enhancement for unduly influencing a minor victim to engage in prohibited sexual conduct under § 2G1.3(b)(2)(B); (3) a 2-level enhancement for use of a computer to encourage prohibited sexual conduct under § 2G1.3(b)(3)(B); (4) a 2-level enhancement for an offense involving a commercial sexual act under § 2G1.3(b)(4); and (5) a 2-level enhancement for obstruction of justice under § 3C1.1. As discussed below, the government agrees with the defense that a 3-level adjustment for acceptance of responsibility is appropriate, resulting in a total offense level of 29 and an applicable Guidelines range of 87 to 108 months' imprisonment.

II.     The Guidelines

At the defendant's plea hearing and as part of the defendant's plea agreement, the government represented that it would not oppose a 3-level downward adjustment for acceptance of responsibility.  While still conceding that it will abide by the terms of the plea agreement, the government notes for the Court that the defendant's conduct following his release on bond does display a continued readiness to flout the law.  Indeed, the defendant's letter to the Court suggests that he only participated in the sex trafficking scheme out of friendship to the escorts and that any financial benefit he received was inconsequential and unintended.  Not surprisingly, the defendant's own psychiatric examiner found that the defendant "may not have been completely forthcoming about the extent to which he was involved in the escorts' business exchanges." (Def. Br. Ex. A at 20).  Notwithstanding these considerable misgivings as to the defendant's present state of mind, the defendant will still receive the benefit of the plea bargain from the government, and the government is not advocating for a finding that the defendant has not accepted responsibility.

V.      Discussion

   A.     The Nature and Circumstances of the Offenses and
          the History and Characteristics of the Defendant

The Guidelines account in part for the nature and circumstances of the instant offense – working with others to traffic a minor to participate in prostitution.  Additionally, the Guidelines account for the defendant's audacious effort to destroy evidence during his post-arrest interview.  This obstructive act is particularly troubling in light of the defendant's previous employment as an NYPD officer who swore an oath to uphold the law, as well as the defendant's prior military service.  The Guidelines also account for the defendant's use of online advertising to traffic the minor.

Notably, the Guidelines do not account for the defendant's fundamental abuse of his position of trust as a longtime NYPD officer who dedicated his evenings and nights to breaking the law.  Nor do the Guidelines account for the perpetration of the sex trafficking ring as a whole, which comprised at least 10 prostitutes whom the defendant made available to clientele throughout the New York metropolitan area.

   B.     General Purposes of Sentencing

Title 18, United States Code, Section 3553(a) requires the sentencing court to consider the general purposes of sentencing, including: "the need for the sentence imposed- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Gall v. United States, 128 S. Ct. 586, 597 n.6 (2007).

Here, a Guidelines sentence is necessary to adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense of conviction.

It is hard to overstate the seriousness of the instant crime of conviction, which involved the trafficking of a 16-year-old girl by a then-NYPD police officer. Sex trafficking is an inherently coercive offense, and the repeated victimization of an adolescent for financial gain is even more troubling. Moreover, a serious sentence is necessary to promote respect for the law, in particular by this defendant. As established by the events leading to the defendant's arrest and his post-arrest conduct, the defendant has repeatedly flouted the law. This conduct is particularly shocking in light of the defendant's employment during much of the period of the offense of conviction as an officer with the NYPD. Finally, a sentence within the applicable Guidelines range is necessary to provide just punishment for the serious offense of repeatedly trafficking a 16-year-old victim over a period of 2 years, including by making online advertisements to solicit customers for the minor victim.

IV.   Conclusion

For the foregoing reasons, the government requests that the Court impose a sentence within the applicable Guidelines range of 87 to 108 months' imprisonment.

Respectfully submitted,

BRIDGET M. ROHDE
Acting United States Attorney

By:   /s/ Alexander A. Solomon
Alexander A. Solomon
Assistant U.S. Attorney
(718) 254-6074

cc:   Michael Padden, Esq. (via email)
Clerk of Court (SMG) (via ECF)

5